Go ahead. Good morning, Your Honors, and may it please the Court, my name is Tom Fay, and I'm counsel for Appellant Pitzer College. I'd like to reserve two minutes of my time for rebuttal. In this case, Your Honors, an insurance company on a pollution remediation insurance policy is denying coverage for a remediation of a covered lead pollution event because of a technical failure of notice. Indian Harbor makes three basic arguments for why those facts give it the right to forfeit Pitzer's coverage. The first argument is that Indian Harbor contends that New York's common law strict notice rule should apply despite California's strong public policy against technical forfeitures of coverage in the insurance context. Indian Harbor's second argument is that it contends that the consent provision bars coverage, even though the emergency exception applies here, and even though the normal rationales for strict application of such provisions are absent in this context. And third, Indian Harbor contends that a notice provision placed within the consent provision is strictly enforceable even under California law because of where it appears in the policy. None of these arguments are meritorious. This Court should reverse the decision of the Court below and should remand for further proceedings. Turning to the first issue, the notice prejudice rule. The California Supreme Court in the Ned Lloyd Lyons case adopted the restatement rule for the choice of law determination in situations where a contract contains a choice of law provision. The restatement rule and the Ned Lloyd rule have two prongs. The first prong being if a fundamental policy of the forum state is implicated and would be violated by the use of the chosen state's law, and if the forum state has a materially greater interest in the outcome of this particular item of dispute, then the choice of law provision will not be honored and instead the forum state's law will be applied. So the law here that the parties agreed to was New York? That's correct, Your Honor. Okay. New York law here under a case called Indian Harbor, same insurance company, same insurance policy actually with a different insured, Indian Harbor versus San Diego, city of San Diego in New York. Under that case, New York's common law strict notice rule, so not the notice prejudice rule, but rather a strict application of the notice provision would apply because the policy in question was issued and delivered outside the state of New York. Now, the court below applied New York law here, but California law should have been applied because of the many statements by many courts at many different times that California has a strong and abiding public policy embodied in the notice. Has any court said it's a fundamental, that the notice prejudice rule is a fundamental policy under California? Not that I'm aware of. I'm not aware of any court using the word fundamental. Is there a difference between something that's important and significant versus fundamental? No, Your Honor. Why not? Simply put, Your Honor, the test doesn't exclusively use the word fundamental. For example, in the Ned Lloyd Lyons case, the California Supreme Court adopted the restatement rule, but that wasn't the first time the restatement rule had been applied. It had been applied in at least four California Court of Appeal decisions previously, which the court cited with approval. And in three of those four cases, California Court of Appeal cases, the court used the formulation strong public policy, and that word has been used repeatedly to describe. In the conflict of laws arena? There has not been, to my knowledge, Your Honor, a choice of law case on California's notice prejudice rule. There is a case from a bankruptcy court in Texas, an adversary action in which the court did determine that Texas' notice prejudice rule, which is the same as California's, was such a policy that would overcome a contractual choice of law provision. That's the ATP oil case. It's very recent, 2015. That's the only case nationwide that I'm aware of and that has been cited in the briefs that has considered the question of whether or not a, I'm sorry. No, I was just thinking, or at least one thought that occurred to me as I looked at this was whether or not the parties could contract around the notice prejudice rule. They can't, Your Honor. They can't? They cannot. There is, in fact, a New York case called Steadfast, the Steadfast insurance case. In that case, New York's intermediate court of appeals, not the confusingly named court of appeals, which is the highest court in New York, but the intermediate court, applied California law and determined that an express provision in an insurance contract, which said that we're not going to apply the notice prejudice rule here, we're contracting around it, was contrary to California's public policy and was void. That was an intermediate court of appeal decision from New York? In the state of New York. Is there any indication in California law that the parties could contract around the notice prejudice rule? There, not that I am aware of, and additionally, Your Honor, it should be pointed out that that New York court was applying California law. So to the extent that there is any, and I should point out as well, there's been no authority cited by Indian Harbor for that proposition either. If there were a case law that did recognize the party's ability to contract around the notice prejudice rule, that would seem like it's not a fundamental policy, right? It would potentially be problematic, yes, Your Honor. The Ned Lloyd Lyons case says that a fundamental public policy is one that the parties can't get around by contract. That's correct. But that's not the case here. Again, California's strong public policy is such that you can't contract around the notice prejudice rule. If you're going to have a generalized notice provision in an insurance contract, California law requires the insurer, per the Campbell case 50 years ago, to show prejudice before that provision is going to be enforced to forfeit the coverage of the insured. The second prong of the Ned Lloyd restatement test is the materially greater interest prong, and this doesn't merit much time. It's very clear that California's paramount interest in protecting its citizen insured from technical forfeiture of insurance coverage should greatly trump any minimal interest that New York might have in this case, particularly given that there is no New York party in this case whatsoever. Turning to the second issue, the consent provision, it's important to start with the policy language. The policy provides that for pollution remediation, the insured, here, Pitzer, decides what type of remediation to perform. And so when you talk about consent, this is that they couldn't start remediation work under the policy? Yes, Your Honor. Without the approval of the insurance company? Yes, Your Honor, the written consent of the insurance company. That's correct. The policy provides that the insured decides what type of remediation to perform, and Indian Harbor, the carrier's only role is to consent to the remediation, which consent, quote, shall not be unreasonably withheld. In other words, unlike the ordinary situation that you would see with a general standard third-party commercial general liability policy, it's the insured who controls and chooses from a range of reasonable alternatives what to do. And for that reason, there are two reasons that the consent provision should not apply to bar coverage here. The first is the emergency exception. The natural reading of the emergency provision is to understand that where the words, where any delay on the part of the insured would cause injury to persons or damage to property or increase significantly the cost of responding to any pollution condition, those words explain, define what emergency basis means in this policy. Let me just back you up just one step. Do we apply the conflict of law analysis to the consent provision as well? That depends. Why is that? It depends on the court's rationale for decision. If the court rules based on the emergency exception, there's no conflict between California and New York law, and the court need not decide the choice of law question. If, on the other hand, the court turns to the second reason, which I'm going to get to, then the court does have to apply a choice of law analysis. Yes. Separate and apart from the notice provision. But as to the emergency exception, New York and California law are in accord in how this should be interpreted. If the provision is unambiguous, then you go with the plain meaning. But if the provision is capable, susceptible of more than one reasonable and non-strained interpretation, then the court must choose the interpretation that favors coverage. And here, this provision is, we contend the natural reading is that emergency basis is defined and explained by the language that directly follows it, describing any delay on the part of you may ensure causing injury to persons, damage to property, or a significant increase in the cost of responding to any pollution condition. And Pitzer showed, in connection with Indian Harbor's summary judgment motion in the court below, that indeed, had Pitzer delayed in immediately getting environmental consultants out to the project, in choosing a remediation option, and ultimately in treating, excavating, and removing 15,000 tons of lead-contaminated and treated soil within just over three months, that this would have resulted in increased costs of responding to the pollution condition. And for that reason, it's squarely within the emergency exception. Now, Indian Harbor contends that the emergency exception should be read such that the emergency ends when Pitzer has the opportunity to contact Indian Harbor. They talk repeatedly about the ability of Pitzer to pick up the phone. What took Pfizer so long? Or why did it take so long for Pfizer to become aware that there was coverage under this policy? Simply put, there was a misunderstanding. They fell asleep. They didn't understand the policy, yes, Your Honor. That's correct. They didn't understand it. Nobody paid the attention to it. Nobody looked at it. That's correct. They didn't understand the policy. They did not understand that this provided coverage for this type of remediation. But that fact, the mindset of the insured, isn't relevant to whether or not this comes within the emergency exception, nor is it relevant to the question of whether or not California law would apply the notice prejudice rule here. But in the interest of time, that's laid out in great detail in our brief. I just wanted to jump to the Indian Harbor's last argument, which is the idea that the notice provision, which is buried within the consent provision, would bar coverage independently and would be strictly enforced even under California law. There was kind of an emergency situation here as well. They had a deadline for getting this dormitory completed. Absolutely. And then they realized that they hadn't done any soil testing. That's right. So then they determined, after doing some soil testing, that the lead levels in the soil were dangerous. Too high. Very high. Yes. About twice as high. Yes. And so they had to get it cleaned up. Now there's only two pieces of equipment in this area that can do the job quickly and clean up the soil. That's right. That's to say they do it right on site. That's right. And they were just lucky that one of them was open because of the cancellation. That's right. So they jumped right on that and got it done. And all this remediation took place right there and then. That's right. And then they take the soil and put it back. They took the soil and removed it to a landfill. It's all clean now. Yes. Okay. Did you want to save some time for rebuttal? I did, Your Honor. I have about two minutes left. And I'm going to save my two minutes. I'll use my last ten seconds here. At its core, this case is about an insurance company trying to find a way to turn a technical failure of notice into a $2 million forfeiture of coverage. That is contrary to California's decades-old, repeatedly expressed fundamental public policy against such forfeitures. As such, this Court should reverse and remand. Okay. And I'll reserve the remainder of my time. Thank you, Your Honor. May it please the Court. Max Stern for Appellee Indian Harbor Insurance Company. Indian Harbor submits that this Court should affirm the District Court's summary judgment because of two independent reasons. First, that Pitzer waited six months after it discovered pollution at its site to give notice to Indian Harbor. And who was its pollution liability insurer? The policy was a pollution and remediation legal liability. Did anyone from your company ever sit down with someone, Pfizer, and explain to them this policy that you issued is pretty complicated? Lots of words in there, lots of fine print. I mean, what was the premium on that? The premium on the policy, I can look up here, $27,535. Say that again. $27,535. A year. I believe that's the premium. Or a quarter. Or the period of the policy. That's a year policy. In answer to Your Honor's question, did anyone sit down and explain it to them? There were annual meetings with the persons. Let's take a step back. Pitzer's insurance is purchased by the Claremont University Consortium, a group of all of the colleges. They had annual meetings with the insurance company, and they understood how this worked. In fact, when Pitzer came to the Claremont Consortium, who acts as its risk manager, and said, we spent this money and want to report it to an insurer. They said, it's too late. You're not going to get coverage. When Pitzer went to its broker, who completely understood how these policies work, they said, it's too late. You're not going to get coverage. But they went ahead and they said, submit it anyway, see what happens. They said, when they got his denial, they said, it's not unexpected, because there's been a violation of the notice and consent provisions. Those were understood by the people that purchased the insurance, the risk manager of the Claremont Consortium, and by the broker for the policy. Well, if California law applied, you would have to show prejudice on the failure to give you timely notice. On the notice side. That's correct. Right. So if California law applied, there's no question you would have to establish that you were prejudiced in some way. And that's a pretty hard burden for you to meet under California law. It is a hard burden. It's generally thought of that way. It's not such a hard burden when the entirety of a resolution of an obligation has been reached. California law has found prejudice many times when you go through a trial and you never give notice, and afterwards you give notice. When you don't give notice through a course of a case and settle it, they find prejudice. They almost find prejudice a matter of law in cases like Earl. Well, all that happened here was the remediation work was completed, and then they submitted it. Right. So the work is completely done. They've discovered contamination. They spent two months figuring out what to do with it. No time do they ask to notify the insurer. They're told by their attorney. On the issue of prejudice, I gather it would be, you know, could the work have been done a bit cheaper? Well, there's two parts. Or could it have been done in a different way? We submitted a declaration showing it could have been done cheaper. And this is even more important prejudice, and I want to point this out right here. The right of recovery against third parties was lost. And this is at ER 260 is the expert report. And it points out that the fact that the cleanup was done in a NCP noncompliant way, that waived CERCLA contribution rights against third parties. So there was no opportunity. By not giving Indian Harbor the opportunity to get in. It strikes me that if California law applies, that there's probably a factual dispute on prejudice. And I understand that's what the district court found. But if we look at the declarations, as we have to in a de novo review. My understanding of the whole dispute is you contend, and the district court found, that New York law applied. Absolutely. And the reason is because the notice prejudice rule isn't a fundamental policy. Why not? The reason is because. I mean, you can look at California Supreme Court cases, and they talk about the importance of insurance, of shifting costs and whatnot. I think there's two important points I want to make on that. And this is really part of that whole idea. Well, I'd say it isn't part of that because the notice prejudice rule is an important policy. It's described as a strong policy. It's been around for a long time. But it only applies to certain policies, as we explained. It doesn't apply to all policies. And when you put notice provisions into other parts of the policy, like we put it into an exclusion on a buyback part, that's enforced by California law. And let's think about what we're talking about. The notice prejudice rule adds an element to a defense, the late notice defense. It says time alone isn't enough. We're adding an element, prejudice. But we're not talking about whether our contract is unconscionable, whether we're violating any statutory or constitutional rights. It's very much like what this court did in General Starr, where it said a higher burden of proof for proving fraud doesn't violate any fundamental policy because all we're doing is changing the requirements for proving something that can be established. California doesn't. It's kind of a technical rule, right? Not at all. Why not? Because it's what the parties contracted for. And that's what New York has done. I asked counsel a question. Could the parties contract around the notice prejudice rule? In California? Yes. I don't think so. Why not? I wouldn't say because I think that that would be – as far as the notice provision itself, in a soon as practical, in an occurrence policy, the kind of notice prejudice rule has always been applied in. But the parties do contract around the notice prejudice rule when claims made policies with respect to the reporting period. There's probably an open issue as to whether that applies at all, even in the body of a claims made policy. But we haven't briefed that issue on this appeal. In this particular policy, under California law, could the parties have contracted or agreed that the prejudice part – if you didn't give notice, that's it? We think they could. Eliminated the prejudice requirement. Under California law. Could you construct a policy like that? That wouldn't be enforced in California. Would that be enforced in California? It would not be enforced in California. Why not? Because they require a prejudice element in asserting a notice. Who requires the prejudice element? California Supreme Court in Campbell. So then it's a pretty – It's a strong public policy. But the Supreme Court in Ned Lloyd italicized the word fundamental. Why doesn't it match up with a fundamental kind of policy? Because it has so many exceptions, because the nature of it isn't the nature of other things that have been found to be fundamental policies. It's only an additional element in the defense, after all. And if we look at the context here, which if you look at Ned Lloyd carefully, they look at the context of what was decided. They said, in this context, is this really such a fundamental deprivation of rights to be under Hong Kong law? And the context here, it isn't just the kind of late notice that California has always wanted to protect against, which is – if I can finish this one point. Well, California has a very strong public policy of protecting the environment. And the environment is protected here. Pitzer College is a sophisticated commercial entity. It has plenty of money to spend to protect the environment. There's no question the environment was going to be protected here. That was – it's just between these two parties what the allocation of risk was in their contract. The environment's protected in this situation. That's not a question, and that isn't a – there's no dispute about that. It's a fundamental policy of the state of California to protect the environment. That, in certain situations, that may be the case. No, no, no, no. But it doesn't – that is not a fundamental policy that prevents policies from having a choice of law. No, you've got some very poisonous substances there. We want to get it out. Lead. That has a lot of – it affects the brain and all the rest of it. It's bad stuff. Actually, in this situation, there was – our experts said there was problems with the way it was tested. So it really wasn't as extreme a situation. There's an issue of fact there. I don't know why you just don't pay this. Because the insurance company sold a product that it chose to issue only under New York law, where it would not have to pay if people went ahead and did remediation without its consent. Our experts show that hundreds of thousands of dollars could have been saved, and rights against third parties could have been preserved if only they had sought our consent, if they had done some different things. They chose a particular route to clean up, and that route to clean up did not allow for – and they did not allow us to have any say in the matter. Let me ask you. What would you have said? What would you have said? We would say – What would you have said? We would say, let's look at the options. And there's a series of options. They took the option where they got that bad stuff out. They remediated right on the site. And it was all tested all along. And they put it back. And, in the court below, in the record we have, our expert identified five different options that would have saved money. Well, yeah. You can get experts that say anything. Your Honor, I've worked with this expert. I mean, this is not saying anything. There's some real issues here. And their expert couldn't respond to them, couldn't or wouldn't. He didn't challenge those points at all. Well, how were you hurt on this? Well, because hundreds of thousands of dollars, too much was spent. And because rights of recovery against third parties were waived. But under California law on the consent provision, if we move away from notice and move to consent, there doesn't have to be any prejudice. You never have to show how you were hurt because it is a – the California public policy against forfeiture only applies to prospective forfeiture after the time of the breach. It's a little bit complicated, but the Faust case that this court decided, the Insua case by the state court, and the Jamestown Builders case all explain this concept that notice is a problem, and notice and cooperation have a prejudice requirement that applies to them because a breach of them can be relied on the insurer to avoid paying for things that subsequently happen. But when you breach consent and you spend the money and you don't give the insurer a chance to get involved, then there's no prospective forfeiture. There's no forfeiture at all. You fail to abide by the contract and involve the insurance company. But there are exceptions to that rule, correct? There is an exception. Emergency. The only exception is the emergency basis. Let me ask you this. Why isn't there at least a factual dispute as to whether or not there was an emergency? Well, because two months was spent just deciding on the remedy. That's not an emergency basis. That doesn't fit under the words. Well, the emergency could be. As Judge Pragerson pointed out, apparently there were only two machines in the Los Angeles area that were capable of doing this work on site, and they had to make a prompt decision about whether to pursue that. But they did make a prompt decision. Or else there would be significant delay in construction and getting it done and all that. All the costs would have gone up. The California Supreme Court in Grabaldo and the Court of Appeal in Jamestown Builder both addressed this issue, and they say that the option for the insured is to, during that two-month period it was deciding what to do, it had to tell the insurer what it wanted to do and give them the option of consenting or not. At that point, then the insurer's got to move promptly. It can't delay. It can't refuse to respond. But in this situation where they don't contact them at all, California law is very clear. Moreover, New York law, again, strictly enforces that consent provision. And there's no reasonable basis, no reasonable way you can say that this was done on an emergency basis when it takes two months to decide what to do. In fact, there's a two-week period that we identify where nothing is done whatsoever. There's inactivity at the site. You know, these policies are so long. The people don't just take them home and sit there before they go to bed and read everything carefully. Only if you want to fall asleep quickly. These are sophisticated commercial parties, and they've been in the consent provision. Every California and New York decision that's looked at this has enforced them. None have said those provisions are ambiguous or hidden, anything of the sort. So that these are provisions, especially with two sophisticated parties who have been in the market, who have a decade of experience with this type of insurance, who had annual presentations, and who actually did understand this requirement. Let's not forget that Claremont… But has any California court read into the consent provision, the prejudice requirement of some sort? No. In fact, they repeatedly refused to do so. And we look at Jamestown, Faust, again, Faust, Jamestown builders, and in Sewell, all specifically addressed that issue and says that there's a difference, that prospective forfeiture versus retrospective forfeiture issue is the public policy reason why you don't extend the prejudice rule. The reason I ask that question, isn't the consent provision similar to the notice provision? Well, that argument's been made many times, and that was addressed, in fact, in this court's Faust decision. And the reason it's not similar is because notice is merely to apprise and give an opportunity for investigation, but consent is where the rubber hits the road. It's where money is getting paid, and the insurer doesn't have to pay for things it didn't have a chance to object to. That's been recognized uniformly in both states. And remember, if we look at… We can't impute this prejudice requirement or protection of insurance to the consent clause because that has to be decided under New York law. The party's choice of law there, there's no reason not to enforce it. And specifically with respect to that, the timing, I was last going to say, is the timing requirement in that the requirement for immediate notice, notice immediately thereafter in the consent provision, that should be decided under New York law too because it doesn't offend California to have a timing requirement in an exclusionary wording. Okay, your time is up. Thank you. So what are you going to tell us now? I have a few points on rebuttal, Your Honor. Yeah, all right. First point, the court has repeatedly asked us whether the parties can contract around the notice prejudice rule under California law, and the answer is no. This court in the Cisneros decision said that the notice prejudice rule was a mandatory contract term. It could be treated that way. Also, Your Honor, the notice provision itself doesn't have an exclusion or a prejudice provision written into it. Already in Campbell, the very first case, the court is saying, we don't care what your contract says. We're going to enforce our prejudice requirement. Second, as to the question of whether or not prejudice was shown here, you know... You're the attorney for the... That's right, for the school. For the school. Yes. Do you read this policy? I read it in the context of this litigation. I wasn't... You didn't look at it before. I wasn't representing them prior to that. Oh, okay. Indian Harbor takes the position that there are some real issues as to prejudice, and that's true, but they're factual issues that can't be decided on summary judgment. This is about... But, you know, you could prevail on the notice prejudice prong, but you've got consent. He's got another argument that... That's right, and... You lose on consent in the end. We don't lose on consent, Your Honor, because the consent provision here includes a written emergency exception, which is distinct, by the way, and this is my third point, from the California emergency case law, which describes a situation where there's no exception written into the policy. Here there is a written emergency exception that's defined by its terms, and it applies here to allow coverage for expenses that are incurred to avoid an increase in the cost of responding to the condition. Okay, your time is almost up, so make your last point. As to the consent provision, counsel says there's no California case that says that you have a prejudice rule. That's true for third-party cases. There's no case on point either way for first-party coverage. Thank you, Your Honors. Okay, thank you very much, counsel. Thank you. The matter is submitted.
judges: Pregerson, Noonan, Paez